UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | No. 2:15-cv-1108-MCE-KJN |
| Plaintiff, | |
| v. | ORDER |
| BALBIR SINGH DHILLON, et al., | |
| Defendants. | |

Presently before the court is plaintiff Joe Hand Promotions, Inc.'s ("plaintiff") motion for default judgment against defendants Balbir Singh Dhillon and Maxim's Restaurant, both also doing business as McHenry's Bar and Restaurant (collectively "defendants").[1] (ECF No. 8.) Defendants failed to oppose the motion, which was submitted on the record and written briefing pursuant to Local Rule 230(g). (ECF Nos. 10, 11.)

For the reasons stated below, plaintiff's motion is GRANTED IN PART.

I. BACKGROUND

Plaintiff initiated this action on May 22, 2015, alleging claims under 47 U.S.C. § 605; 47 U.S.C. § 553; and Cal. Bus. & Prof. Code §§ 17200 *et seq.*, in addition to a state law tort claim

---

[1] All parties who have appeared in the action consented to the jurisdiction of a United States Magistrate Judge for all purposes, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c). (ECF No. 12.)

1

for conversion.  (See generally Complaint, ECF No. 1 ["Compl."].)  Defendants are the owners, operators, persons in charge, or persons with control of the commercial establishment doing business as McHenry's Bar and Restaurant ("McHenry's Bar"), which is located at 3121 W. Benjamin Holt Drive in Stockton, California.  (Compl. ¶¶ 7-14.)  Plaintiff was granted by contract "the exclusive nationwide commercial distribution (closed-circuit) rights to *Ultimate Fighting Championship 173: Renan Barao v. T.J. Dillashaw*, telecast nationwide on Saturday, May 24, 2014" ("Plaintiff's Program"), which included "all under-card bouts and fight commentary encompassed in the television broadcast of the event."  (Id. ¶ 16.)

Plaintiff alleges that on May 24, 2014, defendants either specifically directed the employees of McHenry's Bar "to unlawfully intercept and broadcast Plaintiff's Program" at McHenry's Bar, or that the actions of McHenry's Bar employees are directly imputable to defendants "by virtue of their acknowledged responsibility for the actions of McHenry's Bar." (Compl. ¶ 11.)  Plaintiff further alleges that the unlawful broadcast of Plaintiff's Program resulted in increased profits for McHenry's Bar.  (Id. ¶ 13.)

In its complaint, plaintiff requested statutory damages of $110,000 for defendants' violation of 47 U.S.C. § 605, as well as recovery of all costs and reasonable attorneys' fees. (Compl. at 11-12.)  The complaint further sought statutory damages of $60,000 for defendants' violation of 47 U.S.C. § 553, as well as recovery of all costs and reasonable attorneys' fees.  (Id. at 12.)  The complaint also sought compensatory, exemplary, and punitive damages; reasonable attorneys' fees; and costs of suit for defendants' tortious conversion of Plaintiff's Program.  (Id.) Finally, the complaint requested restitution, declaratory relief, injunctive relief, attorneys' fees, and costs of suit for defendants' violation of sections 17200 *et seq.* of the California Business & Professions Code.  (Id. at 13.)

Plaintiff's complaint and summons were served on defendants by substituted service at the address of McHenry's Bar on July 3, 2015.  (ECF Nos. 4, 5.)  On August 31, 2015, plaintiff filed a request for entry of default against defendants, which the Clerk of Court entered on September 1, 2015.  (ECF Nos. 6, 7.)  The instant motion for default judgment against defendants was filed on September 22, 2015.  (ECF No. 8.)  Despite having been served with process and all papers

filed in connection with plaintiff's request for entry of default and motion for default judgment, defendants failed to respond to plaintiff's complaint, plaintiff's request for entry of default, or plaintiff's motion for default judgment.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);

Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

### III.   DISCUSSION

#### A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

For the reasons stated below, an evaluation of the Eitel factors supports the entry of a default judgment.

##### 1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would face prejudice if the court did not enter a default judgment, because plaintiff would be without another recourse for recovery against defendants. Accordingly, the first Eitel factor favors the entry of a default judgment.

##### 2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

In its motion for default judgment, plaintiff only seeks relief on two of its four claims – its claim for violation of 47 U.S.C. § 605 and its conversion claim. (ECF No. 8-1.) Accordingly, the court only addresses those claims and declines to consider whether plaintiff's remaining claims were sufficiently pled and have merit.

###### a. Liability under 47 U.S.C. § 605

In its motion for default judgment, plaintiff seeks statutory damages pursuant to its claim under 47 U.S.C. § 605. That statute prohibits the unauthorized interception, reception, publication, or divulgence of interstate radio or wire communications. See 47 U.S.C. § 605(a).

Specifically, it provides, in pertinent part, that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008). The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a). Section 553(a) states, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). A split of authority has developed as to whether the unlawful interception of a broadcast in the course of transmission over a cable system is covered by both sections 553(a) and 605(a), or whether it is only covered by section 553(a). Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996), and TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (only covered by section 553(a)), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (covered by both sections 553(a) and 605(a)).

At a minimum, plaintiff's complaint and evidence support a conclusion that defendants intercepted, without authorization, a transmission of plaintiff's Program and broadcasted it to their patrons. Plaintiff has supplied proof of defendants' violation through an affidavit of an investigator who entered McHenry's Bar on May 24, 2014, and viewed Plaintiff's Program. (See Affidavit of Gerald R. Andrews, Jr. ["Andrews Aff."], ECF No. 8-3.) The investigator's affidavit

indicates that Plaintiff's Program was displayed on 2 of the 3 televisions he observed after entering McHenry's Bar, and provides details of the portions of plaintiff's Program that he viewed.  (Id.) (noting the names and attire of fight participants, a description of the bartender, the number of televisions, and other distinguishing features of the establishment).  Accordingly, plaintiff establishes that defendants have violated the gravamen of 47 U.S.C. § 605.

However, plaintiff concedes that the operative complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendants.  Nevertheless, plaintiff argues that, although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast), it should not be prejudiced for its inability to do so in light of defendants' failure to respond to the complaint.  The court agrees that, under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the exact type of transmission at issue because of defendants' failure to appear in the action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority discussed above has little practical impact in this case, because, as discussed below, the court awards statutory damages and enhanced statutory damages which are towards the lower end of the spectrum of damages available under both section 553 and section 605.

Consequently, the court finds that plaintiff's claim under 47 U.S.C. § 605 is sufficiently pled and has merit.

### b. Conversion

The Ninth Circuit Court of Appeals has held that a claim for conversion in California has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 906 (9th Cir.1992).  In this case, plaintiff purchased the licensing rights to the program at issue, defendants aired plaintiff's Program without plaintiff's permission, and plaintiff alleges that it suffered damages as a result of this airing, because it was deprived of the commercial license fee that would ordinarily be charged for permitting defendants to show plaintiff's Program in their establishment.  (Compl. ¶¶ 16-20, 30-33.)  Therefore, plaintiff's

conversion claim is sufficiently pled and has merit.

Accordingly, the second and third Eitel factors favor the entry of a default judgment.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). By its motion for default judgment, plaintiff seeks a judgment in the total amount of $111,250.00 against defendants, consisting of $110,000.00 for violation of 47 U.S.C. § 605 and $1,250.00 for the tort of conversion.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136, 1136 (S.D. Cal. 2009) (proposed award amount of $100,875.00 was "manifestly excessive under existing law"); J & J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default judgment," such as damages totaling $114,200.00); see also Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved."). However, as discussed below, the court declines to award the large amount requested. Consequently, with the reduced amount of damages awarded by the court, the fourth Eitel factor also weighs in favor of the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The court may assume the truth of well-pled facts in the complaint (except as to damages) following the clerk's entry of default, and thus there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default… there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the fifth Eitel factor favors a default judgment.

////

### 5. Factor Six: Whether Default was Due to Excusable Neglect

"The sixth Eitel factor considers the possibility that the default resulted from excusable neglect." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, there is no indication in the record that defendants' default resulted from excusable neglect, and the sixth Eitel factor thus favors entry of a default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In light of the above discussion, and upon careful evaluation and balancing of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants.

### B. Terms of the Judgment to be Entered

After determining that a party is entitled to the entry of default judgment, the court must determine the terms of the judgment to be entered.

As stated above, plaintiff requests judgment in the total amount of $111,250.00 against defendants, consisting of $110,000.00 for violation of 47 U.S.C. § 605 and $1,250.00 for the tort of conversion. Although defendants failed to object to the amount requested, one of the factors the court is free to consider in exercising its discretion to grant default judgment is the sum of money to be awarded. See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605, at *3 (E.D. Cal. Dec. 12, 2011). Considering plaintiff's briefing and the record in this case, the court awards reduced damages.

1. Damages Under 47 U.S.C. § 605

For purposes of a 47 U.S.C. § 605 claim, a plaintiff may elect to seek either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(I & II). The statute generally provides for statutory damages for each violation of not less than $1,000.00 and not more than $10,000.00, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff here seeks the maximum award of $10,000.00. The statute also authorizes enhanced damages of not more than $100,000.00 if the court finds the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). In this case, plaintiff seeks the maximum of $100,000.00 in enhanced statutory damages, for a total of $110,000.00. In support of that request, plaintiff argues that the requested amount is justified primarily because of the need to deter broadcast piracy and the significant harm done to plaintiff's business as a result of such activities. Although deterrence is certainly an important consideration, the court finds plaintiff's requested damages to be grossly excessive and unsupported by the record here.

In this case, plaintiff's investigator, who was present in McHenry's Bar for approximately 22 minutes, noticed about 7 people in the establishment who were eating or drinking (one table of patrons eating and four persons at the bar). The investigator noted that McHenry's Bar had three 32-inch televisions, two of which displayed plaintiff's Program. He also reported that there was no cover charge for entry on the night in question. (See ECF No. 8-3.) Furthermore, there is no evidence before the court that defendants promoted the fight's airing at McHenry's Bar, or that a special premium on food and drink was charged on the night of the fight. Indeed, with so few patrons in the establishment, it is highly unlikely that McHenry's Bar was doing any greater level of business on the night Plaintiff's Program was shown than at any other time.

In light of this record, which lacks evidence of defendants reaping any significant profit from their piracy of Plaintiff's Program, the court awards plaintiff $1,000.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). However, because plaintiff has alleged that defendants acted willfully and for purposes of direct/indirect commercial advantage or private financial gain (Compl. ¶ 20), and because it is extremely unlikely that defendants innocently or

9

inadvertently intercepted plaintiff's Program, the court also finds that plaintiff is entitled to $3,000.00 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). To be sure, as plaintiff contends, defendants and other commercial establishments would be encouraged to violate the law if they knew that the full extent of their liability would not exceed what they would have to pay for a license on the open market. However, when added to the cost of a license fee for plaintiff's Program, which the court awards pursuant to plaintiff's conversion claim below, these statutory damages should serve as sufficient deterrence to defendants and similarly-situated commercial establishments, while at the same time remaining proportionate to the circumstances of the case. See J & J Sports Productions, Inc. v. Jurado, 2011 WL 6153605, at *4 (E.D. Cal. Dec. 12, 2011) (collecting awards in similar cases).

### 2. Damages for Conversion

Damages for conversion are measured by the value of the property at the time of the conversion. Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221 (2003). In the context of broadcast piracy, damages for conversion have often been calculated based upon the amount that the defendant would have been required to pay for a proper sublicensing agreement. See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605, at *5 (E.D. Cal. Dec. 12, 2011); J & J Sports Productions, Inc. v. Ro, 2010 WL 668065, at *4 (N.D. Cal. Feb. 19, 2010).

Plaintiff claims $1,250.00 in conversion damages, because that is purportedly the amount that defendants would have been required to pay plaintiff to lawfully air plaintiff's Program. The affidavit of plaintiff's president, Joe Hand, Jr., indicates that the commercial sublicense fee to air plaintiff's Program is based on the capacity of the establishment. (ECF No. 9 at 3, ¶ 8, Ex. 2.) The problem is that plaintiff has provided no evidence of the actual capacity of McHenry's Bar. Plaintiff's investigator noted the presence of 7 people at the time he visited McHenry's Bar, but failed to indicate the establishment's overall capacity. (See ECF No. 8-3.) As such, the court has no basis to award the requested $1,250.00. Instead, the court awards conversion damages of $750.00, which are based on the commercial sublicense fee that would have been charged if McHenry's Bar had a capacity of 0-50 people. (ECF No. 9, Ex. 2.)

IV.     CONCLUSION

In sum, the court finds that plaintiff is entitled to $4,000.00 in statutory damages (based on its claim under 47 U.S.C. § 605) and $750.00 in compensatory damages (based on its claim of conversion), for a total of $4,750.00.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for default judgment (ECF No. 8) is GRANTED IN PART.

2. Judgment is entered against defendants jointly and severally in the amount of $4,750.00.

3. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: November 24, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE